*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. J. SIMMONS, Minor.

UNPUBLISHED
August 10, 2023

No. 363836
Macomb Circuit Court
Family Division
LC No. 2020-000153-NA

Before: BOONSTRA, PJ., and LETICA and FEENEY, JJ.

PER CURIAM.

Respondent, the mother of the minor child, SJS, appeals as of right the trial court's order terminating her parental rights to the child under MCL 712A.19b(3)(c)(*i*), (g), and (j).[1] We affirm.

In July 2020, petitioner Department of Health and Human Services (DHHS) filed a petition requesting that the trial court exercise jurisdiction over the minor child. The petition alleged that on March 2, 2020, respondent was found unresponsive at a hospital and the child's father had been charged with physically abusing the child. On June 16, 2020, another complaint instigated a new investigation after respondent was found unresponsive at a hospital due to alcohol related issues. Before respondent was hospitalized, she left the child with a friend by the name of David, who in turn left the child with his friend Tanya who was a known heroin addict. The Clinton Township police found Tanya passed out on the side of the road in the driver's seat of her vehicle, with the child SJS in the back seat. On July 24, 2020, respondent entered a no-contest plea to the allegations in the amended petition and the court obtained jurisdiction over the child.

After the trial court accepted respondent's plea, she was offered a treatment plan that required her to participate in a psychological evaluation as well as a substance abuse assessment and follow the recommendations, submit to random drug screens, complete parenting classes and demonstrate benefit, consistently participate in parenting time and appropriately parent the child, maintain safe and suitable housing and cooperate with a home study, provide proof of a legal

---

[1] Although respondent asserts that the trial court also terminated her parental rights under MCL 712A.19b(3)(c)(*ii*), the record discloses that the trial court expressly found that petitioner did not meet its burden of proof with regard to § 19b(3)(c)(*ii*).

source of income and demonstrate an ability to pay bills and budget for the child, live a lawful lifestyle and resolve any legal issues, and maintain contact and cooperate with petitioner. The trial court adopted the treatment plan and ordered respondent to comply with the plan.

On August 16, 2022, petitioner DHHS filed a supplemental petition requesting termination of respondent's parental rights. The petition alleged that respondent failed to benefit from mental health or substance abuse treatment because she missed drug screens, visitation and therapy, continued to submit positive drug screens, and continued to demonstrate inconsistent emotional stability. The petition further alleged that although respondent had completed parenting classes, she failed to demonstrate effective, age-appropriate parenting skills, and more recently the child had displayed negative reactions during and after visits. Respondent never advanced to unsupervised visitation because of her continued drug or alcohol use and ineffective parenting skills. Further, respondent was unemployed and failed to provide any proof of employment after November 2021. Following a hearing in October 2022, the trial court found that petitioner established statutory grounds for termination pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), and further found that termination of respondent's parental rights was in the child's best interests. Respondent appeals the termination of parental rights to SJS.[2] We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court erred by finding that grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*) and (j). As noted earlier, however, respondent incorrectly asserts that the trial court relied on § 19b(3)(c)(*ii*) as a statutory basis for termination. Although the supplemental petition requested termination under § 19b(3)(c)(*ii*), the trial court expressly found that petitioner did not meet its burden of proof with regard to subsection (c) (ii). Further, the record discloses that in addition to relying on §§ 19b(3)(c)(*i*) and (j), the trial court also relied on § 19b(3)(g) as an additional ground for termination. Respondent does not address the trial court's findings regarding § 19b(3)(g). Accordingly, any challenge to the trial court's reliance on § 19b(3)(g) may be considered abandoned. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008); see also *In re JS & SM,* 231 Mich App 92, 98-99; 585 NW2d 326 (1999) (where a respondent does not challenge a trial court's determination as to one or more of several statutory grounds for termination, this Court may assume that the trial court did not clearly err by finding that the unchallenged ground was proved by clear and convincing evidence), overruled in part on other grounds by *In re Trejo,* 462 Mich 341, 353; 612 NW2d 407 (2000). In any event, the trial court did not clearly err by finding that the evidence supported termination of respondent's parental rights under all three cited grounds, §§ 19b(3)(c)(*i*), (g), and (j).

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a

---

[2] The father of SJS released his parental rights and did not join in this appeal.

definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

MCL 712A.19b(3)(c)(*i*), (g), and (j) permit termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

MCL 712A.19b(3)(c)(*i*) is satisfied if, despite the time the parent is given "to make changes and the opportunity to take advantage of a variety of services, the conditions that originally brought the child[] into the foster care system still existed." *In re Powers*, 244 Mich App 111, 119; 624 NW2d 472 (2000). The trial court originally took jurisdiction of the child because respondent left SJS without proper care and custody due to respondent's mental health and substance abuse issues. The child, who was only 3 years old at the time of termination, was in care for more than two years while respondent was offered services. Respondent participated in a psychological evaluation, individual therapy, and supervised visitation therapy. She was required to submit drug screens and her therapist combined substance abuse treatment with respondent's individual mental health therapy. Respondent was also offered a parent partner, but she threatened the parent partner, refused to apologize, and declined to appeal for acceptance back into the program.

After more than two years while SJS was in care, respondent still submitted drug screens that were positive for THC and cocaine, and she continued to miss scheduled screens. When confronted by the caseworker, respondent initially denied any marijuana use, then claimed that she had been around people who were smoking it, and later stated that she had smoked marijuana "for fun." At the termination hearing, respondent testified that a friend gave her CBD gummies that she did not know contained THC. She also denied any cocaine usage. Respondent denied any substance abuse issues despite her history of positive screens, missed screens, and admitted prior drug use.

With regard to respondent's mental health, there were several periods when respondent stopped attending therapy or was terminated from therapy due to poor attendance. Respondent refused to attend therapy from October 2021 to January 2022. Although she reengaged in therapy by June 2022, respondent was no longer attending therapy and told the caseworker that she stopped going because she did not see the point of it. Additionally, respondent was hospitalized for approximately two weeks in May 2022 because she had a breakdown after she stopped taking her Prozac, Haldol and Antabuse to address her bipolar, schizophrenia, and alcohol issues. Respondent then returned to therapy, but her attendance between August and September 2022 was inconsistent. Accordingly, the therapist terminated her from the program.

Respondent also demonstrated continued emotional instability. She threatened the parent partner, the foster parents, and the caseworker. Respondent left a series of threatening voicemails for the parent partner after hours, and the caseworker believed respondent was under the influence of alcohol or another substance because respondent slurred her words. Although respondent testified that she regretted sending threatening Facebook messages to the foster parents, she admitted that she sent the messages to scare them. Respondent also sent the caseworker threatening messages late at night, sometimes as many as 50 at a time. The caseworker received these messages as late as May 2022, one month before petitioner filed the supplemental petition for termination of respondent's parental rights.

Respondent's attendance at scheduled visits was inconsistent and she never attended 100% of the available visits during any reporting period. In the six months before the termination hearing, respondent attended only half of the available visits. The foster parents reported that in November 2021, the child began having behavioral issues after visits with respondent, such as tantrums, nightmares, and physical altercations with other children at daycare. And the child expressed reluctance to attend visits and attempted to leave the visitation room during parenting time.

Considering this evidence, the trial court did not clearly err by finding that respondent failed to adequately address the conditions that brought the child into care. The trial court also did not clearly err by finding that there was no reasonable likelihood that respondent would be able to rectify these conditions within a reasonable time considering the child's age. Respondent's participation and progress did not improve as the case advanced, but rather became more sporadic and the child's behavior worsened. Accordingly, the trial court did not clearly err by finding that the evidence supported termination under § 19b(3)(c)(*i*).

With respect to § 19b(3)(g), the evidence established that, after more than two years, respondent failed to substantially comply with the requirements of her treatment plan. Section 19b(3)(g) requires the trial court to consider the respondent's financial ability to provide proper care and custody. In addition to the evidence discussed above regarding respondent's failure to adequately address her substance abuse and mental health issues and her failure to consistently attend parenting time with SJS, the trial court made findings regarding respondent's financial ability to provide proper care and custody for SJS. With regard to employment, respondent told the caseworker that she did not believe that she could work because of her mental health. But, respondent's therapist advised that respondent should seek employment because her emotional well-being improved when she was employed. The trial court considered this evidence and found that respondent had the ability to financially provide for SJS, but she chose not to seek

employment. And as explained earlier, the evidence established that, after more than two years, respondent failed to substantially comply with the requirements of her treatment plan. In particular, she was not consistently participating in therapy, her mental health remained unstable, she continued to submit positive drug screens, and she failed to consistently attend visits with the child. The trial court did not clearly err by finding that the evidence supported termination of respondent's parental rights under § 19b(3)(g).

The harm contemplated by § 19b(3)(j) includes emotional harm in addition to physical harm. *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). The trial court relied on its findings regarding §§ 19b(3)(c)(*i*) and (g) to find that the evidence also supported termination under § 19b(3)(j). The evidence established that respondent did not rectify the conditions that led to the adjudication, which left the child without proper care and custody. During two separate periods, October 2021 to January 2022, and August to September 2022, respondent failed to participate in her treatment plan to rectify the conditions that brought the child into care. On several different occasions, respondent's behavior was erratic and threatening to the service workers and foster parents. As the case progressed, the child's behavior during and after parenting time with respondent deteriorated considerably. Because respondent failed to adequately address her substance abuse and mental health issues, and her dedication to visitation with the child was lacking, the trial court did not clearly err by finding that there was clear and convincing evidence that the child would be harmed if returned to respondent's care.

## II. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights was in the child's best interests. We disagree.

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews for clear error the trial court's findings regarding a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

As explained in *In re White*, 303 Mich App at 713-714:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citation omitted.]

Respondent argues that the termination of her parental rights was not in the child's best interests because she loved the child, wanted to reunite with her, and she and the child shared a

strong bond. The evidence did not support respondent's assertion of a strong bond; on the contrary, the caseworker testified that respondent and the child shared a distant bond. Moreover, as the child grew older and respondent's attendance at visitation remained inconsistent, the child began experiencing adverse effects from visits and she strongly resisted attending the visits. The foster parent described coaxing and bribing the child to cooperate while preparing for parenting time. The child threw tantrums and tried to run out of the visitation room. She also experienced negative behaviors after visits, such as nightmares, an inability to sleep, and biting and misbehaving at daycare the following day. Because of respondent's missed visits, missed drug screens, and inconsistent participation, respondent never progressed to unsupervised visitation. Respondent's lack of participation and negative behavior did not support her belief that she would be able to provide proper care and custody for the child within six months.

The testimony established that the child was thriving in her current placement, and that she and her foster family were well-bonded. The foster mother testified that she and her husband were committed to providing permanence and stability for the child and they were financially able to fully support her. A preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney